IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF 
TEXAS
 
════════════
No. 07-0522
════════════
 
 
Benny P. Phillips, M.D., 
Petitioner,
 
v.
Dale Bramlett, Individually 
and as Independent Administrator of the Estate of Vicki Bramlett, Deceased, 
Shane Fuller and Michael Fuller, Respondents
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Seventh 
District of Texas
════════════════════════════════════════════════════
 
 
Argued April 22, 2008
 
 
     Justice O’Neill, joined by Chief Justice Jefferson, Justice Hecht, 
and Justice Green, dissenting.
 
 
            
I agree with the Court that section 11.02(a) of the Medical Liability Act 
plainly caps the physician’s liability in this case, and that section 11.02(c), 
in denying insurers the Act’s liability limitations in a Stowers action, 
does not operate to abolish that protection. See Act of June 16, 1977, 
65th Leg., R.S., ch. 817, §§ 11.02(a), (c), 11.04, 
1977 Tex. Gen. Laws 2039, 2052, repealed by Act of June 11, 2003, 78th 
Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 
884 [hereinafter Tex. Rev. Civ. Stat. 
art. 4590i]. To this extent, I 
join the Court’s opinion. The Court’s analysis, however, ventures further and 
extends Stowers well beyond its common law mooring. The Stowers 
doctrine was crafted to afford the insured a safe harbor should its insurer 
unreasonably refuse to settle a claim within policy limits and the insured 
thereafter suffer an excess judgment. By extending Stowers protection 
beyond the actual peril to which the insured is exposed, the Court ventures into 
uncharted waters with no footing in the statutory text or the common law. In my 
view, section 11.02(c) merely clarifies that section 11.02(a) does not cap the 
amount an insured may recover from its insurer in a future Stowers 
action; it does not pin that potential recovery on a hypothetical judgment for 
which the insured is not liable. It may be true, although not in this case, 
that nonsettling insurers 
whose policy limits reach or exceed the statutory cap face minimal 
Stowers exposure when a jury awards damages exceeding the cap. But there 
is nothing to indicate the Legislature intended section 11.02(c) to afford insureds a windfall beyond the damages actually suffered. 
The Court avoids such an untenable result by construing the statute to grant the 
plaintiff in the underlying malpractice suit a claim for equitable subrogation 
against the insurer who is negligent in refusing to settle. But the plaintiff 
cannot be equitably subrogated to a cause of action that does not exist, and 
what exists is a Stowers claim for the amount by which the judgment 
exceeds policy limits. Because the Court’s interpretation subjects insurers to 
liability beyond that which Stowers would allow, I respectfully dissent. 
Rather than remand the case for further proceedings, I would render judgment for 
the plaintiff pursuant to the statute.
            
In construing a statute, our goal is to give effect to the Legislature’s 
intent. Tex. Gov’t 
Code § 312.005; Kroger Co. v. Keng, 23 S.W.3d 347, 349 (Tex. 
2000). To discern that intent, we look first to the 
statute’s plain language. Cont’l Cas. Co. v. 
Downs, 81 S.W.3d 803, 805 (Tex. 
2002). We must consider the statute as a whole, and not its 
provisions in isolation. Id. Section 11.02(a) limits 
physicians’ liability for noneconomic damages to 
$500,000, as adjusted by the Consumer Price Index. Tex. Rev. Civ. Stat. art. 4590i, 
§§ 11.02(a), 11.04. Section 11.02(c) provides that the statute’s 
limitation of liability does not extend to an insurer when facts exist that 
would support a Stowers claim. Id. at § 11.02(c). In crafting subsection (c), the Legislature 
clearly indicated it did not intend the subsection (a) damage cap for physicians 
to limit the liability of an insurer who negligently rejects a reasonable 
settlement demand within policy limits. But that does not mean the Legislature 
intended to extend insurers’ potential liability beyond the limits of the 
Stowers doctrine itself. See G.A. Stowers Furniture 
Co. v. Am. Indem. Co., 15 
S.W.2d 544 (Tex. Comm’n App. 1929, holding 
approved). To the contrary, subsection (c) only applies “where facts 
exist that would enable a party to invoke the common law theory of recovery 
commonly known in Texas as the ‘Stowers Doctrine.’” Tex. Rev. Civ. Stat. art. 4590i, 
§ 11.02(c). We must begin, then, with the parameters of the Stowers 
doctrine and the recovery it affords, for subsection (c) lifts the statutory 
cap only to the extent that damages would be available under Stowers.
            
Stowers liability is designed to 
compensate the insured for damages suffered as a result of its insurer’s 
unreasonable refusal to settle. See Hernandez 
v. Great Am. Ins. Co. of N.Y., 464 S.W.2d 91, 94 (Tex. 1971) (“[T]he 
Stowers action lies to repair the harm to the insured. The tort of the insurer 
in mismanaging the defense of the insured in the first case is harmful to the 
insured alone.”). For the Stowers duty to arise, there must be policy 
coverage for the claim, a settlement demand within policy limits, and the demand 
must be reasonable “such that an ordinarily prudent insurer would accept it, 
considering the likelihood and degree of the insured’s potential exposure to 
an excess judgment.” Am. Physicians Ins. Exch. v. Garcia, 876 
S.W.2d 842, 849 (Tex. 1994) (emphasis added). When the 
Stowers duty is breached, the insured is afforded “the Stowers 
remedy of shifting the risk of an excess judgment onto the insurer.” 
Id. 
(emphasis added). Accordingly, a judgment against the insured that 
exceeds policy limits is the sine qua non of a Stowers claim.
            
The Court goes astray in presuming, incorrectly, that the section 
11.02(a) damage cap “prevents one critical element of Stowers, excess 
liability, from arising in whole or in part,” and from that premise concludes 
the Legislature must have intended to tie Stowers liability against 
physicians’ insurers to the jury’s verdict rather than the court’s judgment. The 
Court’s premise is flawed in a number of respects. First, the Court presupposes 
that nearly all physicians will insure themselves to the full extent of the 
statutory cap, which would substantially diminish the potential for excess 
liability. However, one need look no further than this 
case to see the fallacy of the Court’s supposition. Taking into account the 
statutory adjustment for fluctuations in the Consumer Price Index, and excluding 
economic damages which are not subject to the cap, section 11.02(a) operated in 
this case to reduce the jury’s $9,196,364.50 award against Dr. Phillips to 
$1,585,365.85. 258 S.W.3d 158, 176–77; Tex. Rev. Civ. Stat. art. 4590i, §§ 11.02(a), (b), 11.04. Dr. Phillips, however, was 
insured under his professional liability insurance policy for only $200,000. 
Accordingly, Dr. Phillips faces nearly $1.4 million in personal exposure on the 
capped judgment in excess of his policy limits, for which he may pursue a 
Stowers claim against his insurer. It is simply not true, as the Court 
posits, that the statutory cap eliminates the 
possibility of liability in excess of $500,000 against insurers who unreasonably 
refuse to settle.
            
Second, the Court concludes that my view, which comports with that of the 
court’s in Welch v. McLean, 191 S.W.3d 147, 166–71 (Tex. App.—Fort Worth 
2005, no pet.), deprives section 11.02(c) of any meaning because it extends the 
cap to insurers when Stowers would not. However, it is not the statutory 
cap that operates to limit an insurer’s excess liability but the Stowers 
doctrine itself, which ties that liability to the judgment against the insured. 
The Court apparently believes the damage cap’s potential to cabin insurers’ 
Stowers exposure is undesirable, as reasonable and timely settlements 
will thereby be discouraged. But the Court’s approach of pinning Stowers 
liability under section 11.02(c) to a hypothetical judgment based on the jury’s 
verdict exposes insurers to liability far exceeding that which Stowers 
would allow and, more importantly, undermines the Medical Liability Act’s 
overarching purpose to reduce the cost of insurance in order to alleviate what 
the Legislature determined to be a health care liability crisis in Texas. 
See Tex. Rev. 
Civ. Stat. art. 4590i, § 
1.02(a)(4). Finally, even if it were true, as the Court 
presumes, that nearly all physicians are fully insured in every case up to the 
statutory cap (which is not as easy as it sounds considering the cap’s 
variability), insurers remain subject to liability for special and consequential 
damages that their negligent failure to settle caused their insureds, which section 11.02(c) makes clear is not subject 
to the section 11.02(a) damage cap. See Ranger County 
Mut. Ins. Co. v. Guin, 723 S.W.2d 656, 660 (Tex. 1987) (noting that 
in a Stowers action, the insurer is alleged to have breached its agency 
relationship, so tort damages will be available). And even if the Court’s fears 
are true that the statutory cap makes insurers more likely to unreasonably 
refuse settlement offers because little is at risk in a subsequent 
Stowers action (which I consider unlikely considering the costs involved 
in protracted litigation), this is a function of the cap itself and not of the 
insurer-insured relationship, as physicians who might be uninsured would 
presumably have the same predilection. Removing the cap only when an 
insurer refuses to settle for more creates a kind of reverse-Stowers 
problem whereby insurers are encouraged to settle for more than an uninsured 
physician would. In my view, the Legislature’s intent in enacting 
11.02(c) was likely much less complicated than what the Court imagines.
            
To the extent the Court’s interpretation of section 11.02(c) exposes 
insurers to liability in excess of that which Stowers would permit, I 
respectfully dissent. I would render judgment based on what the parties seem to 
agree the cap allows: $1,585,365.85 in favor of the plaintiff.
 
 
                                                                        
___________________________________
                                                                        
Harriet O’Neill
                                                                        
Justice
 
OPINION DELIVERED: March 6, 
2009